UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VINICIA BRIGGS,<br><br>                    Plaintiff,<br><br>     v.<br><br>JO ANNE B. BARNHART, Commissioner of<br>Social Security Administration,<br><br>                    Defendant. | CASE NO.   **C06-5368RBL**<br><br>REPORT AND<br>RECOMMENDATION<br><br>Noted for February 23, 2007 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's final decision.

## INTRODUCTION

Plaintiff, Vinicia Briggs, was born in 1957. Plaintiff did not complete high school, but earned her GED several years later, as well as a year of vocational training to become a 911 dispatcher. She has work experience as a security guard, cashier, steward, and bus driver. On or about January 12, 1997, Plaintiff was injured while working as a van/bus driver for a company named C-Tran. On March 27, 2003, Dr. Markham, who treated Plaintiff summarized her injuries and subsequent treatment as follows:

> The patient is a 45 year-old lady I have known since 1997. At that time she suffered a
> work-related injury. She is still involved in that injury. She has never returned to work for
> C-Tran. At that time, reading my notes, I stated she had a very degenerative cervical spine.

REPORT AND RECOMMENDATION
Page - 1

> She ended up in 1997 undergoing an anterior cervical discectomy with fusion at C4-5 and in 1998 underwent a cervical laminectomy at C5-6. She did not do well with either operation. She really never recovered enough to return to her former job. Since then she has had 3 different jobs, one working for a cruise line, one as a cashier and one as a security person doing investigations. She is presently unemployed. In the past 1 year she has new onset of neck pain with radiation down both arms to the thumbs. She has neck spasms and pectoralis area spasms. At night she tells me that she will awaken with her legs feeling uncomfortable as if they do not belong to her as she puts it. Sometimes she will have numbness and tingling in all fingers but nothing permanent. She has had no permanent weakness. She has noticed no change in her gait. On one occasion she awakened with some numbness in her left foot. She has had no recent injuries.

Tr. 155.

On June 25, 2003, Plaintiff filed applications for disability insurance benefits and SSI disability benefits, alleging her disability began on June 17, 2000, due to the two surgeries on her neck; pain in her neck, shoulders, arms, and hands; muscle spasms in her shoulders, chest and back; and arm and hand weakness (Tr. 54-56, 313-15). The applications were denied initially and upon reconsideration (Tr. 29-36, 318-19). Plaintiff then requested a hearing before an ALJ (Tr. 39). On December 20, 2005, the ALJ held a hearing, at which time he heard testimony from Plaintiff and Scott Stipe, a vocational expert (Tr. 325-72). On January 10, 2006, the ALJ issued a decision finding that Plaintiff retained the residual functional capacity to perform a significant number of jobs available in the national economy and therefore, was not disabled (Tr. 18-26). The Appeals Council denied Plaintiff's request for review on May 5, 2006, making the ALJ's decision the Commissioner's final decision (Tr. 7-10). 20 C.F.R. §§ 404.981, 416.1481, 422.210.

The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920. At step-one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date (Tr. 25). At step-two, the ALJ found that Plaintiff established the following severe impairments: cervical degenerative disease, depression, and pain disorder (Tr. 25). At step three, the ALJ found that Plaintiff's impairments, alone or in combination, did not meet the requirements of a listed impairment (Tr. 25). The ALJ further determined that Plaintiff retained the following residual functional capacity (RFC): lift and carry 20 pounds occasionally and 10 pounds frequently (Tr. 22-23); sit, stand, and walk for up to six hours during an eight-hour day; prohibited from using ladders ropes and scaffolds or reaching overhead with her left arm; and restricted to simple, repetitive work, with only occasional contact with supervisors and co-workers, and no interaction with the

general public (Tr. 25). At step four, the ALJ found that Plaintiff could not perform her past relevant work (Tr. 25). At step five, relying upon vocational expert testimony, the ALJ found Plaintiff was not disabled as she was capable of performing a significant number of jobs existing in the national economy, such as a small products assembler, hand packager, and electrical worker (Tr. 26).

Plaintiff filed a Complaint with the Court challenging the denial of his applications for benefits on June 29, 2006. Specifically, plaintiff contends: (1) the ALJ failed to properly consider Plaintiff's credibility; (2) the ALJ erred when he discounted the medical opinion of Dr. Bell; and (3) the ALJ's hypothetical posed to the vocational expert failed to reflect the medical evidence. Defendant counter-argues that the ALJ applied the proper legal standards and that the administrative findings and conclusions were properly supported by substantial evidence.

## DISCUSSION

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

A.   THE ALJ PROPERLY WEIGHED MS. BRIGGS' CREDIBILITY

Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority on evaluating plaintiff's subjective complaints. Bunnell requires the ALJ findings to be properly supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)). An ALJ may reject a claimant's subjective complaints, if the claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in Fair v. Bowen,

*supra*, and Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a work environment where it might be impossible to rest periodically.

Plaintiff argues the ALJ erred in finding Plaintiff's testimony not entirely credible. After summarizing the medical evidence the ALJ weighed Plaintiff's credibility in the context of her residual functional capacity. The ALJ assessed his credibility using factors assigned by the regulations, including (1) activities of daily living; (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness and side-effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for relief of pain or other symptoms, (6) measures used to relieve pain or other symptoms, and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. Social Security Ruling 96-7p. The ALJ found Plaintiff's allegations only partially credible, noting, "Although it is clear claimant does have underlying medical conditions that could reasonably result in the pain she alleges if she attempted to exceed her residual functional capacity as set forth below, the claimant's allegations as to the intensity, persistence and limiting effects of her symptoms are disproportionate and not supported by the objective medical findings or by any other corroborating evidence."(Tr. 21).

The ALJ noted the following basis to discredit Plaintiff's allegations and argument that she is more restricted in her abilities than determined by the ALJ: (i) Plaintiff alleges disability beginning on June 17, 2000, but she engaged in several work activities after this alleged onset date, (ii) Plaintiff last job ended because the job was eliminated (Tr. 17), (iii) the record does not contain evidence that Plaintiff's medical condition deteriorated since her job ended in June 2002, (iv) Plaintiff's reported activities are inconsistent with her allegations of total disability, including her ability to care for take care of home and yard, and (v) the opinions of Dr. Markham, Dr. Smith, and the medical consultants support a finding that Plaintiff is capable of working (discussed further below). After reviewing the ALJ's decision and the administrative record, it is clear the ALJ has provided sufficient reasons to discredit the Plaintiff's credibility and allegations of total disability.

**B. THE ALJ PROPERLY ASSESSED THE MEDICAL OPINION EVIDENCE**

REPORT AND RECOMMENDATION
Page - 4

The ALJ is entitled to resolve conflicts in the medical evidence. <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. <u>Walden v. Schweiker</u>, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." <u>Lester v. Chater</u>, 81 F.3d 821, 831 (9th Cir. 1996). In <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, plaintiff contends the ALJ improperly evaluated the opinion of Dr. Bell. Dr. Bell is considered one of Plaintiff's treating physicians. After noting that Dr. Markham and Dr. Smith had opined that Plaintiff's medical condition would be expected to heal in a relatively short period and that Plaintiff would be able to return to some kind of employment, the ALJ addressed Dr. Bell's opinion, stating:

> J. Bruce Bell, M.D., a neurologist, first examined the claimant on October 7, 2003, and diagnosed her with cervical spondylosis. He stated there was no treatment available for her and opined on the spot that she was "legitimately disabled" (Exhibit 11F). On June 29, 2005, Dr. Bell opined claimant's impairments resulted in marked inability to perform one or more basic work activities, limiting her to sedentary work (Exhibit 16F). Dr. Bells' opinions deserve serious consideration, because he has personally examined the claimant and has followed the course of the claimant's medical condition over a period of time. However, his own clinical notes do not support his opinion. For example, on July 16, 2004, he observed that claimant's most recent MRI revealed only mild canal stenosis at C5-6 and C6-7. He also observed that her lumbar MRI was satisfactory, yet on October 19, 2004, he wrote to the claimant's representative that she had lumbar degenerative disease (Exhibit 15F). Furthermore, although he treated the claimant for her allegedly disabling impairment, that treatment was essentially routine and/or conservative in nature. Finally, although the doctor stated that the claimant is disabled, it is not clear he was familiar with the definition of "disability" contained in the Social Security Act and regulations. Specifically, it is possible the doctor was referring solely to an inability to perform claimant's past work, which is consistent with the conclusions reached in this decision. Because they are not well supported by medically acceptable clinical and/or laboratory diagnostic studies and are inconsistent with other substantial evidence in the case record, the doctor's opinions cannot be given controlling weight (Social Security Ruling 96-2p). Consequently, the undersigned concludes they can be only afforded minimal weight.

(Tr. 22). The ALJ continued his discussion of the medical evidence by relying on the findings of the

1  medical consultants and psychological consultants to conclude that those findings were consistent with
2  clinical record and accurately described the functional impact of Plaintiff's impairments. (Tr. 23).
3      As evidenced by the above quoted explanation, the ALJ carefully considered and evaluated the
4  opinions of Dr. Bell. The ALJ discredited Dr. Bell's statements suggesting Plaintiff was totally disabled
5  based on the internal inconsistencies in his clinical notes, the opinions and reports by Dr. Markham and Dr.
6  Smith, as well as the medical and psychological consultants. The ALJ clearly explained he was relying on
7  this medical evidence, which supports the ALJ's assessment of Plaintiff's RFC and the conclusion that
8  Plaintiff retains the ability to do certain types of light work. The ALJ was entitled to rely on the opinions
9  of the other medical evidence, rather than the statements of Dr. Bell. As noted above, the ALJ must
10 resolve the conflicts in the medical record and may reject the opinion of a treating physician if "specific
11 and legitimate reasons" are provided and supported by substantial evidence in the record. Here, the ALJ
12 gave specific and legitimate reasons to reject the opinion that Plaintiff is "disabled" offered by Dr. Bell.

C.  **SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT PLAINTIFF IS ABLE TO PERFORM CERTAIN TYPES OF LIGHT WORK**

   Plaintiff argues the ALJ erred when he relied on the Vocational Expert's testimony. Specifically, Plaintiff argues the ALJ's hypothetical question posed to the expert failed to incorporate a 2004 physical capacity evaluation which limited Plaintiff to lifting only fifteen pounds occasionally. Here, the ALJ relied on the Vocational Expert's testimony to conclude plaintiff retained the ability to performing certain light work within the national economy, i.e., small product assembly and hand packager, based on the capacity to occasionally lift 20 pounds and frequently lift 10 pounds (Tr. 365).

   At step-five of the administrative process the burden of proof shifts to the Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that Plaintiff could perform in light of his age, education, work experience, and residual functional capacity. See Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); Roberts v. Shalala, 66 F.3d 179, 184 (9th Civ. 1995). In Tackett, the court noted "there are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." Id.

   Plaintiff's allegation that the ALJ erred when he relied on the Vocational Expert's testimony is

REPORT AND RECOMMENDATION
Page - 6

without merit. To a large extent Plaintiff's argument is based on the allegation that the ALJ failed to properly take into account the medical evidence, particularly the opinion of Dr. Bell, and that the ALJ failed to properly credit Plaintiff's allegations regarding the severity of her impairments. As explained above, the ALJ did not err in his analysis of the medical evidence or Plaintiff's credibility. Furthermore, the ALJ's RFC finding, that Plaintiff is capable of lifting 20 pounds occasionally and 10 pounds frequently, is properly supported by the medical consultants 2003 evaluation (Tr. 229). The ALJ is not obligated to accept all of a claimant's proposed limitations, as long as the ALJ's findings are supported by substantial evidence. See Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Accordingly, the ALJ properly questioned the Vocational Expert and relied on the testimony.

## CONCLUSION

Based on the foregoing discussion, the Court should affirm the Administration's final decision denying plaintiff's application for social security disability benefits. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **February 23, 2007**, as noted in the caption.

DATED this 31st day of January, 2007.

                                        */s/ J. Kelley Arnold*
                                        J. Kelley Arnold
                                        U.S. Magistrate Judge